PENACHIO MALARA LLP
235 Main Street
White Plains, NY 10601
(914) 946-2889

Anne Penachio, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION
------------------------------------------X

In re                                              :        CHAPTER 11

TGC MANAGEMENT CORP.,                              :        CASE NO.: 10-24388 (RDD)

                            Debtor.                :

------------------------------------------X

## AFFIRMATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

**FRANK SILEO,** hereby affirms as follows:

1. I am the President, Secretary, and a Director of **TGC MANAGEMENT CORP, ("TGC").**, a New York Corporation with a principal place of business at 57 Lafayette Drive, Port Chester, NY 10573. I have served in these positions since or about 2004 when TGC was founded. I submit this affirmation pursuant to Federal Rule of Bankruptcy Procedure 1007(d) and Local Bankruptcy Rule 1007-2.

2. TGC is in the business primarily of owning and managing rental property at 425 Pleasantville Road, Briarcliff, New York (the "Property"). The Property is an upscale single family home which is rented to a foreign executive pursuant to a written agreement.

3. The Property generates rent of approximately $9,500.00 per month.

4. The Property has an estimated value of $900,000.00.

5. Hudson City Savings Bank ('Hudson City"), successor to Sound Federal

Savings ("Sound Federal"), holds a first mortgage on the Property with a principal balance of approximately $780,000.00. A second mortgage is held by Antoinette Alaio, with a principal balance due of approximately $250,000.00. Outstanding real property taxes are estimated to total $80,000.00.

6. By way of background, TGC had a positive, long standing relationship with Sound Federal, the predecessor to Hudson City. The relationship between myself and Sound Federal began in 2003 when Sound Federal extended construction financing to another entity owned by me and Mike Cicorcia, a fellow shareholder of TGC. The project was highly successful and solidified my relationship with Sound Federal. Based upon my success, Sound Federal expressed an interest in funding similar construction projects. I had a comfort level with Sound Federal based upon my prior experience.

7. In or about 2004, I began the project which is the subject of the current Chapter 11 case. The project was a 2 lot subdivision in an upscale section of Briarcliff Manor in the Town of Mount Pleasant. I was extremely enthusiastic about the viability of the project. In fact, I devoted my full time efforts to the construction, personally supervising the job.

8. Unfortunately, the development faced several setbacks. The first was a moratorium on building instituted by the Town of Mount Pleasant in 2005. This caused delays and significant additional costs. The Town ultimately approved the project with modification.

9. In the Spring of 2006, faced with mounting costs, I approached Sound Federal to request that the loan be increased to $2 million. Sound Federal accommodated me. The second mortgage holder, Antoinette Alaio, also increased her loan from $250,000.00 to $500,000.00. Construction continued through 2006 and 2007. During this period of time, I aggressively marketed the properties.

10. In 2008, one home was substantially complete and the other was approximately 75% complete. Marketing efforts continued despite the collapse of the real estate market in this region.

11. During the construction, Sound Federal was acquired by Hudson City. Loan officers and contacts that were familiar with the project and my successful track record, were replaced.

12. In 2009, one of the homes was sold at a depressed price. Of the proceeds, $650,000.00 was paid to Hudson City and $250,000.00 was paid to the second mortgage holder. Additional proceeds were used to meet expenses and pay other obligations.

13. With the approval of Hudson City, TGC decided to lease the second home (the Property which is the subject of this proceeding). The Property is currently rented to a foreign executive for $9,500.00 per month. There is approximately 1 year remaining on the term.

14. Hudson City informally agreed to cooperate with my plan that to market the Property after the expiration of the lease. Presumable the market would improve and a sale would be more realistic. I relied on Hudson City's assurances that it would work with me.

15. Sound Federal had indicated that it would convert a construction loan to a conventional mortgage. Hudson City also initially indicated that it would adopt this plan. Unfortunately, it did not.

16. Upon information and belief, Hudson City, as a policy, decided that it did not wish to extend non-residential loans. As such, it did not cooperate with TGC and extend the loan, as had been promised.

17. Due to the general downturn in the economy, particularly the real estate

market, TGC fell behind in monthly payments to Hudson City. Hudson City commenced a foreclosure action in New York State Supreme Court, Westchester County. Since or about July 2010, a receiver of rents has been in place to collect rents.

18. Entry of judgment was imminent in the foreclosure action when TGC filed for bankruptcy protection.

19. In the context of this Chapter 11 proceeding, TGC intends to continue to turnover the bulk of the rents collected to Hudson City while formulating a plan to retain the Property until the end of the lease term. I believe that if the Property is marketed properly, a sale will yield sums in excess of the amount due to Hudson City.

20. Hudson City is adequately protected in that there is sufficient equity to cover its position. Moreover, it will continue to receive the vast bulk of rents collected from the tenant on a monthly basis.

21. I estimate that TGF's revenue will total $9,500.00 per month for at least the next 6 months.

22. A copy of the corporate resolution authorizing the filing of TGF's Chapter 11 proceeding is annexed hereto as Exhibit A..

23. A list of shareholders, directors, and officers is annexed hereto as Exhibit B.

24. This case was not originally commenced as a Chapter 7 proceeding.

25. Based upon the foregoing, tt is submitted that TFG's needs and interests will be best served by its continued possession and management of its business as a debtor-in-possession under Chapter 11.

Dated: November 17, 2010
       White Plains, NY

/s/ Frank Sileo
_____
Frank Sileo